IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In the Matter ) | CIV. No. 07-00485 ACK-BMK |
| ) | |
| of ) | |
| ) | |
| The Complaint of HYATT ) | |
| CORPORATION dba HYATT REGENCY ) | |
| MAUI RESORT & SPA, a Delaware ) | |
| corporation, as pro hac vice ) | |
| owner, and MAUI BOAT CO., a ) | |
| Delaware corporation, as owner, ) | |
| of M/S KIELE V, O.N. 628114, for) | |
| exoneration from or limitation ) | |
| of liability. ) | |
| _____) | |

**ORDER AFFIRMING THE MAGISTRATE JUDGE'S ORDER GRANTING CLAIMANTS
PULFER AND SHELBY'S REQUEST TO SEVER THE ISSUE OF DAMAGES AND
ACCEPTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION THAT
CLAIMANTS PULFER AND SHELBY'S REQUEST FOR PARTIAL RELIEF FROM
THIS COURT'S RESTRAINING ORDER BE GRANTED**

**BACKGROUND**[1]

On September 19, 2007, the Limitation Plaintiffs Hyatt

Corporation dba Hyatt Regency Maui Resort & Spa, as pro hac vice

owner, and Maui Boat Co., as owner, of M/S Kiele V, O.N. 628114

("Vessel"), filed a verified complaint.  The complaint alleges

that on March 25, 2007, the Vessel was engaged in conducting a

whale-watching cruise in the Pacific ocean off the Island of

Maui.  Compl. ¶ 6.  The Vessel was returning home when the mast

---

[1] The facts set forth in this Order are recited for the
limited purpose of deciding the motion to sever and for partial
relief.  They shall not be construed as findings of fact upon
which the parties may rely in future proceedings in this case.

failed and fell.  _Id._  Immediately thereafter, a distress call
for assistance was sent out, and the crew began assisting
passengers.  _Id._  Nearby vessels and the United States Coast
Guard came to render aid and the passengers were transferred to
them.  _Id._  During the incident, passengers suffered injuries for
which they and their families have sought or may seek legal
remedy.  _Id._  The Complaint asserts that the value of the Vessel
after the voyage on March 25, 2007, is negative eighty-eight
thousand ten dollars and thirty-five cents (-$88,010.35).  _Id._
¶ 10.  The Limitation Plaintiffs seek exoneration from or
limitation of liability pursuant to the Limitation of Liability
Act, 46 U.S.C. § 30501 _et seq._

        The Limitation of Liability Act provides in relevant
part that "the liability of the owner of a vessel for any claim,
debt, or liability . . . shall not exceed the value of the vessel
and pending freight."  46 U.S.C. § 30505(a).  "If the vessel has
more than one owner, the proportionate share of the liability of
any one owner shall not exceed that owner's proportionate
interest in the vessel and pending freight."  _Id._  "Unless
otherwise excluded by law, claims, debts, and liabilities subject
to limitation . . . are those arising from . . . any loss,
damage, or injury by collision, or any act, matter, or thing,
loss, damage, or forfeiture, done, occasioned, or incurred,
without the privity or knowledge of the owner."  _Id._ § 30505(b).

"In a claim for personal injury or death, the privity or knowledge of the master or the owner's superintendent or managing agent, at or before the beginning of each voyage, is imputed to the owner." Id. § 30506(e).  In short, the Limitation of Liability Act "limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's privity or knowledge." W. Pioneer, Inc. v. Int'l Specialty, Inc. (In re Bowfin M/V), 339 F.3d 1137, 1138 (9th Cir. 2003) (per curiam) (quotation marks omitted).

        "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability . . . ."  46 U.S.C. § 30511(a).  "The procedure for a limitation action is . . . found in Supplemental Admiralty and Maritime Claims Rule F." Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 448 (2001).  Under the rule, the owner must file a complaint in district court within six months after receipt of a written claim and "either pay into court the value of the vessel and freight or transfer his interest in these to a trustee appointed by the court." See Esta Later Charters, Inc. v. Ignacio, 875 F.2d 234, 236 (9th Cir. 1989); Fed. R. Civ. P. Supp. R. F(1); 46 U.S.C. §§ 30511(a), (b).  The fund created by the former option is generally referred to as the "limitation fund."

3

See In re Korea Shipping Corp., 919 F.2d 601, 603-04 (9th Cir. 1990).  "The value of the ship and freight is assessed after the damage or loss has taken place."  Esta Later Charters, 875 F.2d at 236 n.3.  Upon the satisfaction of the foregoing requirements, the court will marshal claims and enjoin the prosecution of any action or proceeding with respect to the matter in question.  See Fed. R. Civ. P. Supp. R. F(3); 46 U.S.C. § 30511(c).

     The court then adjudicates the claims, determining whether the owner is liable and, if so, whether the owner may limit liability.  "The shipowner has the burden of proving that the [negligent] act or [unseaworthy] condition was outside its privity or knowledge after the claimant first establishes what act or condition caused the loss."  W. Pioneer, 339 F.3d at 1138. "If the owner is not exonerated but prevails in his plea for limitation, the [limitation] fund is distributed on a pro rata basis and the owner's liability is at an end."  In re Complaint of Caribbean Sea Transp., 748 F.2d 622, 626 (11th Cir. 1984), amended on other grounds, 753 F.2d 948 (11th Cir. 1985) (per curiam); see also Newton v. Shipman, 718 F.2d 959, 961 (9th Cir. 1983) (per curiam); Fed. R. Civ. P. Supp. R. F(8).  On the other hand, "[i]f the shipowner fails to establish its right under the Limitation Act and limitation is therefore denied, the claimants are released to pursue their original claims in full."  Pickle v. Char Lee Seafood, Inc., 174 F.3d 444, 449 (4th Cir. 1999).  "They

4

may do this through a continuation of the limitation proceeding, or they may return to their original forums and prosecute their original claims which had been enjoined by the order entered in the limitation action." Id. (citing, inter alia, The Silver Palm, 94 F.2d 776, 780 (9th Cir. 1937)).

In this case, the Limitation Claimants assert that they first received notice of a claim on April 5, 2007, and they filed this action on September 19, 2007. Compl. ¶¶ 12, 15. They did not have to deposit a limitation fund with the Court because the value of the Vessel was less than $0 following the incident. On September 24, 2007, the Court found that the Limitation Plaintiffs had met the procedural requirements of the Limitation of Liability Act and therefore entered an order ("Restraining Order") directing that

> the continued prosecution of any and all suits, actions and proceedings which may have already begun against the Limitation Plaintiffs in any Court whatsoever to recover damages arising out of, or occasioned by, or consequent upon, the aforesaid incident or otherwise arising during the March 25, 2007 voyage on which the [Vessel] was then engaged and the institution and prosecution of any suits, actions or legal proceedings of any nature or description whatsoever in any Court whatsoever, except in this proceeding for exoneration from a limitation of liability, against Limitation Plaintiffs with respect to any claim or claims arising out of the aforesaid incident or otherwise arising during the March 25, 2007 voyage on which the [Vessel] was then engaged, or otherwise subject to limitation in this proceeding

5

> shall cease, be and hereby are, stayed and
> restrained . . . .

A number of claims have been filed here by individuals who were present on the Vessel during the incident.  On October 25, 2007, Claimants Michael Keppel and Karrie Ross filed a claim and answer to the complaint.  On October 26, 2007, a claim and answer was filed by Claimant Colette M. Pulfer, in her individual capacity and in her capacities as the independent executor of the estate of Hal Pulfer and as mother and next friend of Randall C. Pulfer, Reece T. Pulfer, and Dana R. Pulfer (collectively, "Pulfer Claimants").  The same day, a claim and answer was filed by Thomas L. Shelby and Sheila A. Shelby, in their individual capacities and in their capacities as parents and next friends of Thomas L. Shelby, Jr., and Hannah Jo Shelby (collectively, "Shelby Claimants").[2]

On June 30, 2009, the Pulfer and Shelby Claimants filed a motion to sever the issue of damages and for partial relief from the Court's Restraining Order in an effort to preserve their rights under Saving to Suitors Clause of 28 U.S.C. § 1333(1).  That section provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction,

---

[2] In addition, claims were filed by Claimants Lisa LaGeese, Robert Clark, and Cammie Clark.  The parties have stipulated to dismiss those claims.

saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The Saving to Suitors Clause is "a grant to state courts of <u>in personam</u> jurisdiction, concurrent with admiralty courts." <u>Lewis</u>, 531 U.S. at 445. Under it, "state courts, with all of their remedies, may adjudicate claims . . . against vessel owners so long as the vessel owner's right to seek limitation of liability is protected." <u>Id.</u> at 455. In their motion, the Pulfer and Shelby Claimants did not oppose the Court deciding the issue of liability or the limitation thereof under the Limitation of Liability Act. Rather, they argued that, should they prevail on those issues, they have a right to try the issue of damages before a jury in Illinois state court pursuant to the Saving to Suitors Clause. They therefore asked for partial relief from the Retraining Order and for bifurcation of the issue of damages so that they could file an action in Illinois before the three-year statute of limitations expires. The Pulfer Claimants reside in Illinois, and the Shelby Claimants reside in Missouri.

On July 6, 2009, Keppel and Ross filed a statement of no opposition to the motion. On August 17, 2009, the Limitation Plaintiffs filed a memorandum in opposition ("Lim. Pls.' Opp'n"). They did not dispute the Pulfer and Shelby Claimants' Saving to Suitors Clause rights. Instead, they maintained that it would be inappropriate to bifurcate the issues of liability and damages

7

under Fed. R. Civ. P. 42(b).  They asserted that bifurcation would be inconvenient, prejudicial, and contrary to expedition and judicial economy.  On August 24, 2009, the Pulfer and Shelby Claimants filed a reply ("P&S Cls.' Reply").

On September 4, 2009, Magistrate Judge Barry M. Kurren held a hearing on the Pulfer and Shelby Claimants' motion and, on September 10, 2009, he entered a written decision ("9/10/09 Decision").  He recognized that a certain tension exists between the Saving to Suitors Clause and the Limitation of Liability Act, insofar as the former "'gives suitors the right to a choice of remedies,'" whereas the latter "'gives vessel owners the right to seek limitation of liability in federal court.'"  9/10/09 Decision 7-8 (quoting <u>Lewis</u>, 531 U.S. at 448).  He noted that, "where the court 'satisfies itself that a vessel owner's right to seek limitation will be protected, the decision to dissolve [an] injunction is well within the court's discretion.'"  <u>Id.</u> at 8 (quoting <u>Lewis</u>, 531 U.S. at 454) (emphasis omitted).

Judge Kurren observed that, in the case at bar, the Pulfer and Shelby Claimants were agreeable to the Court deciding the issues of liability and limitation of liability pursuant to the Limitation of Liability Act and to staying state court damages actions until those issues have been decided.  <u>Id.</u>  He therefore concluded that granting them partial relief from the Restraining Order and permitting them to file actions in Illinois

would reconcile their Saving to Suitors Clause rights with the Limitation Plaintiffs' rights under the Limitation of Liability Act.  <u>Id.</u> at 9.

Judge Kurren then noted that, notwithstanding that conclusion, the Court may only bifurcate the issue of damages and allow the Pulfer and Shelby Claimants to try that issue in Illinois state court if it would be consistent with Fed. R. Civ. P. 42(b).  <u>Id.</u> at 9-10.  He found that, while bifurcation might frustrate the interests of expedition and economy, it would nevertheless further the consideration of convenience and that it would preserve the Pulfer and Shelby Claimants' rights under the Saving to Suitors Clause.  <u>Id.</u> at 10-11.  He consequently ordered that the issue of damages would be bifurcated and recommended that the Pulfer and Shelby Claimants' request for partial relief from the Restraining Order be granted.  <u>Id.</u> at 11.

On September 21, 2009, the Limitation Plaintiffs filed an appeal from Judge Kurren's decision ("Lim. Pls.' App.").  They argue that Judge Kurren's bifurcation order should be reversed or, in the alternative, clarified.  On October 1, 2009, the Pulfer and Shelby Claimants filed a response ("P&S Cls.' Resp.").

## **STANDARDS OF REVIEW**

Judge Kurren's decision is comprised of an order on a non-dispositive matter (bifurcation) and a findings and

9

recommendation (relief from the Restraining Order).  The standard of review for each is set forth below.

## I.   Non-Dispositive Pretrial Matters

Any party may appeal from a magistrate judge's order determining a non-dispositive pretrial matter or, if a reconsideration order has issued, the magistrate judge's reconsideration order on such a matter.  The district judge shall consider the appeal and shall set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.  See D. Haw. Local Rule 74.1; see also 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  The district judge may also reconsider sua sponte any matter determined by a magistrate judge.  See D. Haw. Local Rule 74.1.  "The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo."  Columbia Pictures, Inc. v. Bunnell, 245 F.R.D. 443, 446 (C.D. Cal. 2007). Under the "clearly erroneous" standard, the magistrate judge's ruling must be accepted unless, after reviewing the entire record, this Court is "left with the definite and firm conviction that a mistake has been committed."  United States v. Silverman, 861 F.2d 571, 576-77 (9th Cir. 1998).  The district judge may not simply substitute his or her judgment for that of the magistrate judge.  See Grimes v. City & County of San Francisco, 951 F.2d

10

236, 241 (9th Cir. 1991).   "'A decision is contrary to law if it
applies an incorrect legal standard or fails to consider an
element of the applicable standard.'"   <u>Na Pali Haweo Cmty. Ass'n
v. Grande</u>, 252 F.R.D. 672, 674 (D. Haw. 2008).   The decision to
bifurcate a trial is reviewed for an abuse of discretion.   <u>M2
Software, Inc. v. Madacy Entm't</u>, 421 F.3d 1073, 1088 (9th Cir.
2005).

## II.   Findings and Recommendations

A district court reviews de novo those portions of a
magistrate judge's findings and recommendation to which an
objection is made and may accept, reject, or modify, in whole or
in part, the findings and recommendation made by the magistrate
judge.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); D. Haw.
Local Rule 74.2.   The district court may accept those portions of
the findings and recommendation that are not objected to if it is
satisfied that there is no clear error on the face of the record.
<u>Stow v. Murashige</u>, 288 F. Supp. 2d 1122, 1127 (D. Haw. 2003).
The district court may receive further evidence or recommit the
matter to the magistrate judge with instructions.   28 U.S.C.
§ 636(b)(1).   It may also consider the record developed before
the magistrate judge.   D. Haw. Local Rule 74.2.   The district
court must arrive at its own independent conclusions about those
portions of the magistrate judge's report to which objections are

11

made, but a de novo hearing is not required.  United States v. Remsing, 874 F.2d 614, 618 (9th Cir. 1989).

The Court finds that a hearing in this matter is neither necessary nor appropriate.  See D. Haw. Local Rule 7.2(d).

**DISCUSSION**

**I.   Bifurcation**

The Limitation Plaintiffs essentially ask the Court to reverse Judge Kurren's bifurcation order because, in their view, it is clearly erroneous and contrary to law.  Lim. Pls.' App. 2, 7.  They do not directly address his recommendation to grant partial relief from the Restraining Order.  The Court believes that Judge Kurren struck the proper balance between the Limitation Plaintiffs' rights under the Limitation of Liability Act and the Pulfer and Shelby Claimants' Saving to Suitors Clause rights.  See 9/10/09 Decision 5-9.  Nevertheless, his recommendation to grant relief from the Restraining Order was premised on his decision to bifurcate, as it would make no sense to permit the filing of damages actions if the issue of damages were not severed from this case.  See id. at 9-10.  Thus, whether the Court will accept Judge Kurren's recommendation depends on whether he abused his discretion in ordering bifurcation under Fed. R. Civ. P. 42(b).  The rule provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize,

the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

### A.    Overlap

The Limitation Plaintiffs initially point out that the Pulfer and Shelby Claimants have asserted claims for general and special damages based on their negligence.  Lim. Pls.' App. 3. They contend that Judge Kurren failed to recognize that the issues in this case and in a state court action will overlap and that bifurcation was therefore inappropriate.[3]  Id. at 3-4. They maintain that, in this proceeding, the Pulfer and Shelby Claimants will have to establish that their acts or omissions breached a duty of reasonable care, that the breach caused the Claimants' injuries, and that the Claimants' suffered damages as a result.  Id. at 4.  They further contend that, in the Pulfer and Shelby Claimants' damages case, the Claimants will have to prove that they suffered damages and the extent of the damages. Id.

In response, the Pulfer and Shelby Claimants argue that, in order to trigger the Limitation Plaintiffs' obligation

---

[3] The Limitation Plaintiffs also maintain that the issues of liability for negligence and punitive damages overlap significantly.  Lim. Pls.' App. 4-5.  As explained below, the Court will decide the issue of liability for punitive damages. See infra Discussion Section II.  Thus, the overlap between the issues of punitive damages and liability for negligence does not undermine Judge Kurren's decision to bifurcate.

to prove lack of privity or knowledge, they need only demonstrate that acts of negligence or conditions of unseaworthiness caused the accident.  P&S Cls.' Resp. 19-20.  They insist that they only have to show that the Limitation Plaintiffs' negligence or conditions of unseaworthiness caused the accident, not their specific damages.  Id.

> ### 1.    Whether the Limitation Plaintiffs may limit recovery to the value of the Vessel under the Limitation of Liability Act

As previously noted, the Limitation of Liability Act "limits shipowner liability arising from the unseaworthiness of the shipowner's vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or the act of negligence was within the shipowner's privity or knowledge."  W. Pioneer, 339 F.3d at 1138 (quotation marks omitted).  Limitation of Liability Act "proceedings engender a divided burden of proof." Carr v. PMS Fishing Corp., 191 F.3d 1, 4 (1st Cir. 1999), cited in W. Pioneer, 339 F.3d at 1138.  Each side's burden of proof will be discussed in turn.

> ### a.    The claimant's burden of proof regarding negligence or unseaworthiness

A claimant has the initial burden of showing liability by proving that the shipowner's negligence or unseaworthy conditions of the vessel caused his loss.  W. Pioneer, 339 F.3d at 1138.  In the case of In re Hechinger, 890 F.2d 202 (9th Cir.

1989), the Ninth Circuit explained that, "[o]nce a proper limitation of liability petition has been filed, the court 'must first determine what acts of negligence or conditions of unseaworthiness caused the accident.'"  Id. at 207 (quoting Petition of M/V Sunshine, II, 808 F.2d 762, 764 (11th Cir. 1987)) (brackets omitted).  While the court did use the word "accident," it later explained that a claimant must show that negligence or unseaworthiness caused his "injury."  See id. at 207–08; see also id. at 208 ("[T]he claimant must establish that the act of negligence was a cause, however[] slight, of his injuries.").  Similarly, in Western Pioneer, the Ninth Circuit held that "[t]he claimant retains the burden of proving what act caused the loss even if the shipowner concedes that its crew was negligent."  339 F.3d at 1138.  Thus, in establishing a negligence or unseaworthiness case under the Limitation of Liability Act, a claimant bears the burden of showing that the limitation plaintiff's negligence or conditions of unseaworthiness caused his injuries or losses.

        Still, there is no requirement that a claimant prove the full extent of his damages in order to discharge his burden of proof.  In The Silver Palm, a ship exceeded moderate speed and the excessive speed causatively contributed to a collision with a United States cruiser.  94 F.2d at 777.  The shipowner was held liable for the collision and its petition for limitation of

15

liability was properly denied.  Id. at 777, 780.  However, the
Ninth Circuit concluded that the district court erred in
thereafter requiring the claimants to prove their damages.  Id.
at 780.  The appellate court specifically explained that,
"instead of freeing the claimants to pursue their claims in
separate actions, if they so desired, the [district] court
ordered a reference for the proof of damage to the claimants."
Id.  The Ninth Circuit reasoned that the claimants "should be
free to remain in the limitation proceeding or sue elsewhere."
Id.  The appellate court then dissolved the injunction
restraining separate litigation as to the claimants and reversed
the district court's order of reference for further hearing on
the claims.  Id.  Thus, while a claimant must show that his
injuries or losses were caused by the limitation plaintiff's
negligence or conditions of unseaworthiness, the claimant has no
obligation to prove the full extent of his damages in order to
satisfy his burden of proof as to negligence or unseaworthiness.
Judge Kurren reached a similar conclusion at the hearing.  See
9/4/09 Transcript of Proceedings ("Tr.") 12:21-25 ("I think it's
very different though in what you have to prove to . . . get over
the hurdle on what's necessary for limitation, and then what you

have to prove to . . . actually get an award at the end of the road.").[4/]

### b. The shipowner's burden of proof regarding no privity or knowledge

Once the claimant discharges his burden of proof, the burden shifts to the shipowner to establish that it is entitled to limitation of liability by demonstrating that "the [negligent] act or [unseaworthy] condition was outside its privity or knowledge." W. Pioneer, 339 F.3d at 1138.

### c. Analysis

In light of the foregoing analysis of the burden of proof, it would appear that the Pulfer and Shelby Claimants need not show their damages or the extent thereof in this proceeding. See The Silver Palm, 94 F.2d at 780. However, they must establish that they suffered injuries as a result of the Limitation Plaintiffs' alleged negligence or the alleged conditions of unseaworthiness in order to shift the burden of proof to the Limitation Plaintiffs. The case that the Pulfer and Shelby Claimants must prove in this proceeding will thus overlap with a damages action in state court to the extent that they will

_____

[4/] In addition, as a practical matter, the presentation of evidence as to the full extent of the claimants' damages would be inadvisable where, as here, there is no limitation fund and the claimants seek to recover elsewhere. In the event that the petition for limitation is granted, there would be no fund to distribute pro rata among the claimants based on their damages. See Newton, 718 F.2d at 961; Fed. R. Civ. P. Supp. R. F(8). Proof of damages would be for naught.

have to present evidence as to what their injuries or losses were in each case.  This limited overlap in proof does to some degree counsel against bifurcation.

> **2.   Whether the Limitation Plaintiffs are ultimately liable to the Pulfer and Shelby Claimants for damages**

While on the topic of liability, the Court would like to clarify the potential basis upon which the Pulfer and Shelby Claimants may ultimately recover damages, because the Limitation Plaintiffs raised the issue in their opposition.  Although this point is not directly related to the issue of bifurcation, it will certainly be critical in later proceedings.  In their opposition, the Limitation Plaintiffs argued that the Pulfer and Shelby Claimants were passengers on the Vessel and that passengers are not entitled to a warranty of seaworthiness.  Lim. Pls.' Opp'n. 4 n.1.  The Limitation Plaintiffs therefore asked that the Court dismiss the unseaworthiness claims.  Id.

"To establish a claim for unseaworthiness, [a person] must establish:  (1) the warranty of seaworthiness extended to him and his duties; (2) his injury was caused by a piece of the ship's equipment or an appurtenant appliance; (3) the equipment used was not reasonably fit for its intended use; and (4) the unseaworthy condition proximately caused his injuries."  Ribitzki v. Canmar Reading & Bates, 111 F.3d 658, 664 (9th Cir. 1997).  With respect to the first element, "[t]he person . . . must . . .

18

show that he was 'in the ship's service' and the warranty
[thereby] extends to him." Hechinger, 890 F.2d at 207 (citing
Gebhard v. S.S. Hawaiian Legislator, 425 F.2d 1303, 1310 (9th
Cir. 1970)); accord Craig v. M/V Peacock, 760 F.2d 953, 955 (9th
Cir. 1985) (explaining that the applicability of the doctrine of
seaworthiness under general maritime law depends on whether a
person was a seaman while aboard the ship).

     In their reply, the Pulfer and Shelby Claimants
conceded that they are not entitled to warranties of
seaworthiness.  P&S Cls.' Reply 9.  They further stated that they
are not making a claim for unseaworthiness.  Id. at 10.  The
Pulfer and Shelby Claimants explained that they are instead
asserting that, if the Vessel was unseaworthy and if that
unseaworthiness was within the privity or knowledge of the
Limitation Plaintiffs, then the Limitation Plaintiffs are not
entitled to the limitation defense.  Id.  They have cited a
number of cases in support of their approach.  See id. at 10–11
n.3.  Thus, the Pulfer and Shelby Claimants appear to be
employing their unseaworthiness allegations only in order to
shift the burden of proof.  As they have acknowledged, they may
not recover damages from the Limitation Plaintiffs based on their
unseaworthiness allegations.  The sole basis for recovery would
thus appear to be the Limitation Plaintiffs' alleged negligence.

19

### 3. Summary

To recap, while the Pulfer and Shelby Claimants may be able to shift the burden of proof based on a theory of unseaworthiness or negligence, they may only recover damages on the basis of negligence.  In attempting to shift the burden of proof, they will have to prove that the Limitation Plaintiffs' alleged negligence or conditions of unseaworthiness caused their injuries or losses.  If they are able to shift the burden of proof, the Limitation Plaintiffs will have to establish they are entitled to limitation of liability by demonstrating that the negligent act or unseaworthy condition was outside their privity or knowledge.

There will be some overlap in proof between this proceeding and a state court damages action.  In this case, the Pulfer and Shelby Claimants will have to establish that their injuries or losses were caused by the Limitation Plaintiffs' negligence or conditions of unseaworthiness in order to shift the burden of proof.  In a state court damages action, they will have to prove their injuries or losses as well as the full extent of their damages.  The limited overlap in proof does to a certain extent militate against bifurcation.

### B. Convenience

Judge Kurren acknowledged the overlap between this case and a state court damages action, but he nevertheless found

20

bifurcation to be appropriate because it would further the interest of convenience and because bifurcation would preserve the Pulfer and Shelby Claimants' Saving to Suitors Clause rights. 9/10/09 Decision 10-11; 9/4/09 Tr. 22:2-23:3.  The Limitation Plaintiffs maintain that Judge Kurren failed to balance the convenience to the Pulfer and Shelby Claimants against the inconvenience and prejudice to them, the delay in the proceedings, and the substantial increase in their costs.  Lim. Pls.' App. 5-6.  They contend that bifurcation will require them to prepare for trial in multiple fora and engage the services of at least two groups of attorneys.  Id. at 6.  The Limitation Plaintiffs also assert that separate trials will be particularly inconvenient for them because their witnesses will have to testify at the separate proceedings.  Id.  The Limitation Plaintiffs argue that they will have to engage in the services of additional experts in Illinois.  Id. at 7.  They insist that they will incur increased costs because they will need to duplicate and enter many of the same documents into evidence.  Id. Finally, the Limitation Plaintiffs assert that separate trials will prolong the resolution of this case and require other judges to familiarize themselves with the claims and evidence.  Id.

On the other hand, the Pulfer and Shelby Claimants counter that the Limitation Plaintiffs voluntarily chose to hire the lawyers here in Hawaiʻi in order to gain the special benefits

of the Limitation of Liability Act.  P&S Cls.' Resp. 29.  They
further assert that proof of damages will be no more cumbersome
or expensive in separate trials than in a single trial, because
it makes little difference, in terms of attorney time or expense,
whether a single set of attorneys tries all of the Claimants'
damages or two sets of attorneys divide the work.  Id. at 30.  In
addition, the Pulfer and Shelby Claimants maintain that the
Limitation Plaintiffs' argument that they will be required to
bring many damages witnesses to Illinois is illusory and not
supported by any evidence.  Id.

        The Court concurs with Judge Kurren's finding that
bifurcation may to some extent frustrate expedition and economy.
9/10/09 Decision 11; 9/4/09 Tr. 22:2-23:3.  He nonetheless
concluded, and the Court agrees, that bifurcation would further
the consideration of convenience.  Id. at 10.  Judge Kurren
specifically found that:

> Many of the lay and expert witnesses
> Claimants intend to call to testify in their
> damages action reside in Claimants' home
> states.  Such witnesses include family
> members, friends, and treating medical and
> mental health professionals.  In addition,
> Claimants have made claims on behalf of their
> children, currently ages six through
> fourteen, who were aboard the [V]essel on the
> date of the incident.  It is unclear as to
> what effect returning to the place of the
> incident will have on Claimants' children.
> Further, Limitation Plaintiff Hyatt
> Corporation is headquartered in Chicago and
> thus, its Chicago attorneys can assume

> representation in the state court damages
> action.

Id. (citations omitted).

In addition, Judge Kurren correctly emphasized that the Pulfer and Shelby Claimants are entitled to their remedies in state court under the Saving to Suitors Clause.  Id. at 10-11. He thus suggested that bifurcation would preserve those rights so that they could be exercised in the event that liability is established and limitation is denied.  See id.  As previously noted, once a petition for limitation is denied, the claimants "should be free to remain in the limitation proceeding or sue elsewhere."  The Silver Palm, 94 F.2d at 780.  If the Pulfer and Shelby Claimants' request to bifurcate were denied but they ultimately prevail in this action, the decision to stay in this proceeding or sue elsewhere would essentially have been made for them.  By that time, the three-year statute of limitations for maritime torts would have certainly run (unless the scheduled trial date of June 15, 2010, is advanced), and the Pulfer and Shelby Claimants would have no choice but to remain here to pursue their claims for damages.  See 46 U.S.C. § 30106.

After considering the limited overlap in proof between this case and a state court damages action, the Limitation Plaintiffs' claims of inconvenience and prejudice, the Pulfer and Shelby Claimants' counterarguments, and Judge Kurren's analysis, the Court concludes that Judge Kurren did not abuse his direction

23

in ordering bifurcation.  In other words, his decision has not
been shown to be clearly erroneous or contrary to law.  Judge
Kurren's bifurcation order will be affirmed accordingly.
Consequently, the Court will accept his findings and
recommendation to grant the Pulfer and Shelby Claimants relief
from the Restraining Order.  The Pulfer and Shelby Claimants may
file damages actions in Illinois.  Those actions shall be stayed
pending the resolution of this case.

## II.  Other Issues

The Limitation Plaintiffs offer a couple of fallback
arguments in the event that Judge Kurren's bifurcation order is
affirmed.  First, they maintain that the Court should require
that all discovery, including discovery pertaining to damages, be
conducted in this action pursuant to substantive maritime law,
the Federal Rules of Civil Procedure, and the Local Rules of
Practice for the United States District Court for the District of
Hawaii.  Lim. Pls.' App. 7-8.  The Pulfer and Shelby Claimants
respond that they have already agreed that discovery will
continue in this case rather than the state court case.  P&S
Cls.' Resp. 34.  They note that the only new point that the
Limitation Plaintiffs' have made is a request that damages
discovery be conducted pursuant to substantive maritime law.  Id.
They assert that the issue was not briefed before or decided by

24

Judge Kurren.  Id.  The Court agrees and therefore declines to
address the issue at this time.

          Second, the Limitation Plaintiffs maintain that, even
if the Court severs the issue of compensatory damages, it should
retain the issue of punitive damages, because punitive damages
are inextricably intertwined with liability.  Lim. Pls.' App. 8.
The Pulfer and Shelby Claimants do not oppose this request.  P&S
Cls.' Reply 12.  Nevertheless, the amount of punitive damages
that may be imposed constitutionally is informed by the amount of
compensatory damages recovered.  See BMW of N. Am., Inc. v. Gore,
517 U.S. 559, 580 (1996) ("The second and perhaps most commonly
cited indicium of an unreasonable or excessive punitive damages
award is its ratio to the actual harm inflicted on the
plaintiff.").  Thus, if it turns out that punitive damages are
warranted, it would be inappropriate to impose such damages upon
the Limitation Plaintiffs unless and until the Pulfer and Shelby
Claimants first recover compensatory damages in state court.  As
such, in the same way that the Court has bifurcated liability and
compensatory damages, it will decide in this proceeding the issue
of liability for punitive damages (that is, the question of
whether the Limitation Plaintiffs' conduct warrants the
imposition of punitive damages), but the state court proceedings
will determine what amount of punitive damages, if any, should be
imposed.

## CONCLUSION

In accordance with the foregoing, the Court affirms Judge Kurren's order granting the Pulfer and Shelby Claimants' request to sever the issue of damages and accepts his findings and recommendation to grant the Pulfer and Shelby Claimants' request for partial relief from the Restraining Order.  The Pulfer and Shelby Claimants may file damages actions in Illinois state court pursuant to their Saving to Suitors Clause rights, but those actions shall be stayed pending the conclusion of this case in light of the Limitation of Liability Act.  In sum, this Court will decide all liability issues, including liability for punitive damages, but the Court will not decide the amount of damages that should be awarded if liability is established.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, October 26, 2009.



_____
Alan C. Kay
Sr. United States District Judge

In re Complaint of Hyatt Corp., Civ. No. 07-00485 ACK-LEK:  Order Affirming the Magistrate Judge's Order Granting Claimants Pulfer and Shelby's Request to Sever the Issue of Damages and Accepting the Magistrate Judge's Findings and Recommendation that Claimants Pulfer and Shelby's Request for Partial Relief from this Court's Restraining Order be Granted